UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| MELISSA A. STARR, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 5:03-CV-222-C |
| § | ECF |
| JO ANNE B. BARNHART, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION

Plaintiff Melissa A. Starr seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

Starr claims she suffers from panic disorder, depression, and agoraphobia[1] and that these illnesses present problems that prevent her from working. (Tr. 168.) She reported that she experienced a panic attack for the first time in April 1989 while deep-sea fishing and quit working as a secretary in June 1989 because of panic attacks. (Tr. 27, 168.) She was thirty years old at that time. (Tr. 154.)

---

1

Agoraphobia is a mental disorder characterized by fear of being in places or situations from which escape might be difficult or in which help might not be available in the event the individual should experience a panic attack. Associated anxiety may lead to pervasive avoidance of situations that may include being alone outside the home or being home alone; being in crowded places; traveling in an automobile, bus, or airplane; or being on a bridge or in an elevator. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 432 (4th ed. 2000) (DSM-IV).

**I.    Standard of Review**

Judicial review of the Commissioner's denial of disability benefits is statutorily limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). The Commissioner's decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *see also Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2006) (Standard of review of Social Security appeals is "highly deferential.").

**II.    Discussion**

The claimant's insured status is a threshold issue in DIB claims, and in this case it was determined that Starr's insured status expired on December 31, 1994.[2] (Tr. 9.) Therefore, the Administrative Law Judge (ALJ) was required to determine whether Starr was disabled between June 15, 1989, the date on which she claims she became disabled, and December 31, 1994, the date on which she was last insured and eligible to receive DIB. 42 U.S.C. § 423(a)(1).

---

[2] A claimant is not entitled to DIB unless he establishes that he was disabled on or before the date he was last insured. *See Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) (citing *Ivy v. Sullivan,* 898 F.2d 1045,1048 (5th Cir. 1990) (claimant bears the burden of establishing a disabling condition before the expiration of his insured status)); *see also* 42 U.S.C. §§ 416(i)(3), 423(c)(1).

The ALJ determined that during the relevant time period Starr suffered from a combination of severe impairments including dysthymic disorder and panic disorder with agoraphobia. (Tr. 9.) The ALJ also determined that Starr had minimal physical limitations and could therefore perform the physical demands of work at the medium exertional level. (Tr. 13.) On the other hand, he determined that because of her mental limitations Starr could not perform the full range of medium work and was limited to work that involved only superficial interaction with the public and co-workers and that could be performed at the "lower end of detailed instructions." *Id.* After determining that Starr could work in specific jobs despite the foregoing limitations, the ALJ determined that she was not disabled. (Tr. 13-15.)

Starr appeals the determination that she was not disabled on two grounds. She argues that the ALJ's finding that she could maintain employment for a significant period of time is not supported by substantial evidence. She also argues that the ALJ's decision includes a number of factual errors that cast doubt on the degree of consideration he gave to the record and indicates a lack of evidentiary support for his finding that she could maintain employment.

In support of her first argument, Starr cites *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) and argues that in cases involving mental impairments the ALJ is required to determine that the claimant can hold whatever job he finds for a significant period of time. Starr contends the ALJ in this case merely stated that she "retained the residual functional capacity to obtain, perform, and maintain a limited range of medium work" and did not

3

specifically discuss whether she was capable of maintaining employment and did not raise the issue with either the testifying medical or vocational expert at the hearing.

In *Singletary*, the Fifth Circuit Court of Appeals acknowledged that it is often difficult to predict the course of mental illness because symptoms may wax and wane; individuals with mental illness may experience symptom-free periods indicative of remission that are of uncertain duration followed by relapses or unforeseeable mental setbacks. 798 F.2d at 821. Therefore, in cases in which a claimant's mental illness waxes and wanes, it must be determined whether the claimant cannot only obtain but maintain employment. *Id*. at 822. (It must be determined whether the claimant "can hold whatever job he finds for a significant period of time.") The Fifth Circuit Court of Appeals has since clarified the directives in *Singletary* holding that the ALJ is not required to make a specific finding regarding the claimant's ability to maintain employment in every case; rather, such a finding is required only when the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (2003). In this case there is no evidence that Starr suffered from disabling symptoms that waxed and waned.

According to the medical evidence Starr began treatment with prescription medication in June 1989 and experienced improvement in her symptoms. (Tr. 214-15.) Starr, however, quit taking her medications during the two years following her initial treatment and experienced relapse followed by improvement when treatment was resumed. (*See* Tr. 213 (asking to resume medications after discontinuation), Tr. 273 ("good response to Prozac and Xanax; however, patient had frequent and early relapses with discontinuation of the

4

medication"), Tr. 259, 262 (once medications were resumed in 1991 Starr's symptoms were improved with no recurrence of panic attacks); *see also* Tr. 362.)  In September 1991, two months after Starr resumed treatment with prescription medication, her psychiatrist, E.G. Pascua-Lim, M.D., noted that her panic attacks were in "continued remission." (Tr. 252, 263.)

Thereafter and throughout the remainder of the relevant time period, there is no evidence that Starr suffered from debilitating symptoms. (*See, e.g.,* Tr. 220-26, 237-40, 241-46, 259-63.)  At the start of 1992, Starr's psychologist noted that Starr was "immobilized" and recommended that she engage in more activity, and Starr began taking piano lessons. (Tr. 221.)  Thereafter, Starr made continuing progress in controlling her stress and anxiety, and her psychologist terminated treatment four months later in April 1992.  (Tr. 220.) The remainder of Spring 1992 was uneventful in regard to Starr's panic disorder with the exception of two panic attacks she experienced while out of town and "mild" panic attacks following Memorial Day when she missed a dose of her medication. (Tr. 243-49.)  Despite enrolling in college courses and undergoing marital separation from her husband, Starr continued to do well through the remainder of 1992 without incident of panic attacks. (Tr. 243-46.)

Starr took three college courses in the spring semester of 1993 and underwent a divorce during that time but was able to control her anxiety and associated symptoms; it was noted in treatment records that she was handling the divorce well, was enjoying school, and her energy level was good. (Tr. 220, 225, 241-46.) Although Starr experienced a few panic attacks in Spring 1993, they were attributed to situational stress. For example, Starr reported in May 1993 that she experienced a panic attack while attempting to board an airplane and some panic attacks thereafter and was dealing with stress related to her college classes and news that her ex-husband might remarry. (Tr. 241.) Despite the stress in Starr's life, Dr. Pascua-Lim indicated that Starr's mood was dysphoric but reactive and "[o]ther than the reactive, depressed, and anxious mood," Starr had "done fine" since her medications were increased. *Id*. The following month Dr. Pascua-Lim indicated that Starr was dealing with a number of stressors related to her divorce and school and was experiencing reactive and anticipatory anxiety rather than overt panic attacks and altered Starr's medications accordingly. (Tr. 240.) The following semester Starr continued taking college courses and began treatment with a new psychiatrist for financial reasons. (Tr. 359, 363.) At that time Starr was described as "asymptomatic" and it was determined that her panic disorder with agoraphobia was in remission. (Tr. 359-63.)

According to the medical records, Starr remained asymptomatic throughout 1994, the last year in which she was insured for DIB. In June 1994 Dr. Pascua-Lim noted that Starr had been "panic attack free" and was moving on with her life – she was dating and maintaining a 4.0 in her college courses. (Tr. 239-40.) Although Starr reported the next

6

month that driving was difficult for her and she was "nervous"about driving out of town, Dr. Pascua-Lim noted that Starr had not had a panic attack in a "long time" and characterized her symptoms as "reactive anxiety." (Tr. 238-39.) Finally, in October 1994, Dr. Pascua-Lim noted that Starr continued to do "very well" in school with no recurrent panic attacks. (Tr. 237-38.)

The foregoing demonstrates that although Starr experienced stress, anxiety, and panic attacks in response to stressful situations in her life, she did not experience debilitating symptoms that waxed and waned or would otherwise interfere with her ability to maintain employment for a significant period of time. Rather, the evidence shows that with treatment Starr's anxiety was improved and her panic attacks were infrequent and would not have interfered with her ability to work during the relevant time period. Although Starr experienced panic attacks at times during stressful situations she was able to engage in activities such as attending her son's soccer games and planning a banquet for her son's soccer team, traveling, taking piano lessons, and maintaining a 4.0 grade average in her college classes. (*See, e.g.,* Tr. 49, 222, 226, 240, 242-44, 249, 258-59.) A claimant's testimony regarding his daily activities is a relevant consideration and provides support for an ALJ's decision. *Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990). Based on the evidence regarding Starr's activities as well as testimony from the testifying medical expert (Tr. 57), Starr's panic disorder and related symptoms responded to treatment during the relevant time period and were not the type of waxing and waning

symptoms that would require a separate finding she could maintain work. *Compare Singletary*, 798 F.2d at 822-23. A separate finding in regard to a claimant's ability to maintain work is not required unless the claimant establishes intermittently recurring symptoms that are of sufficient frequency or severity to prevent him or her from holding a job for a significant period of time. *Frank*, 326 F.3d at 619-20; *see also Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (reiterating that the ALJ need not make a specific finding in every case that the claimant can maintain employment). The ALJ was not required to specifically discuss whether Starr was capable of maintaining employment, and Starr's contentions to the contrary must be rejected.

The court must also reject Starr's argument that the ALJ's decision contains factual errors that cast doubt on the degree of consideration he gave to the record and indicate a lack of evidentiary support for his finding that she could maintain employment. The discussion in this Report and Recommendation provides substantial evidence to support the conclusion that Starr was capable of maintaining employment and was not disabled during the relevant time period. The court must therefore view any factual errors in the ALJ's decision as harmless error. Even in a case in which the ALJ commits error, the court is constrained against reversing the Commissioner's decision when such error is harmless. Error is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); s*ee also Frank*, 326 F.3d at 622 (finding harmless error even if it were determined that the ALJ had erred because it was "inconceivable that the ALJ would have reached a different conclusion" in absence of an

8

error). In this case, there is substantial evidence to support the Commissioner's final decision that Starr was not disabled during the relevant time period, and remand for additional proceedings would not change the decision.

## III.    Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Starr's complaint with prejudice.

## IV.    Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   September 7, 2006.

_____
NANCY M. KOENIG
United States Magistrate Judge

10